IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK ATKINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MERRICK GARLAND, in his official ) | Case No. 1:21 CV 291 |
| capacity as Attorney General of the United ) | |
| States, and REGINA LOMBARDO, in her ) | |
| official capacity as Deputy Director, Head of ) | |
| Agency, of the Bureau of Alcohol, Tobacco, ) | |
| Firearms and Explosives, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COMES the Plaintiff, PATRICK ATKINSON, by and through LAW FIRM OF DAVID G. SIGALE, P.C., his attorney, and for his Response to the Defendants' F.R. Civ. P. 12(b)(6) Motion to Dismiss, state as follows:

## INTRODUCTION

Defendants anchor their Motion to the Seventh Circuit's decision in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), but there are significant differences between the situation in *Kanter* and the instant case that require denial of Defendants' Motion.

Therefore, under the Second Amendment to the United States Constitution, *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), Plaintiff has stated a valid claim, and Defendants' Motion to Dismiss should be denied.

## FACTS

The Plaintiff's Complaint (Dkt #1) is incorporated as if fully restated herein. However, a summary of Plaintiff's allegations follows:

## STATEMENT OF FACTS

Patrick Atkinson is 62 years old, is not under indictment, has never been convicted of a crime of domestic violence, is not a fugitive from justice, is not an unlawful user of or addicted to any controlled substance, has not been adjudicated a mental defective or committed to a mental institution, has not been discharged from the Armed Forces under dishonorable conditions, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner. He is married with two grown children.

On October 16, 1998, Atkinson pleaded guilty to, and was convicted, in the Northern District of Illinois Case No. 1:98-CR-00730-03, of one count of frauds and swindles, in violation of 18 U.S.C. § 1341, a Class C felony. The facts underlying the conviction are as follows:

- In 1998, Atkinson was an Executive Recruiter with his own company, Waterford Executive Group, which he opened in 1990. One of his clients, his co-Defendant (Zerba), was in the recruiting department at a large Illinois company that specialized in consultants and outsourcing. Atkinson would place actuaries and consultants at the company and receive a consulting fee.

- In or around 1998, Zerba offered Atkinson a moonlighting job, where Zerba would find professional candidates, and Atkinson would place them with employers, and they would split the recruiting fee. This happened a couple of times without incident.

2

- A few months later, Zerba sent Atkinson the resume of a recruiting candidate from Virginia. Atkinson tried to place the man in an executive position but could not. Eventually, Zerba told Atkinson he thought the man would be a good fit at his own company, and the man was hired. Atkinson believed he would keep the recruiting fee since the candidate was placed at Zerba's own company where Zerba worked as a recruiter. However, Zerba demanded half of the fee and Atkinson gave it to him.

- Soon thereafter, Zerba sent Atkinson another candidate for placement at Zerba's own company. Atkinson thought it seemed suspicious, and declined.

- Soon after that, Zerba called Atkinson and said that he (Zerba) had been fired over referrals and that the police were investigating. When U.S. Postal Inspectors contacted Atkinson, he cooperated fully. Atkinson learned that Zerba was masterminding the scheme with a number of other recruiters, and that Atkinson was unknowingly part of a "hub and spoke" operation, where Atkinson turned out to be just one of multiple spokes.

- For his share of one recruiting fee that totaled $6,000.00, Atkinson was sued by Zerba's employer for $150,000.00 for fraud, civil RICO violations, and conspiracy. Atkinson ultimately settled for $45,000.00, and spent $15,000.00 in legal fees.

- Atkinson was then charged with mail fraud (frauds and swindles) and quickly pleaded guilty. On February 24, 1999, Atkinson was sentenced to two years of probation with six months of home confinement, a fine of $15,000.00, and 200 hours of community service. He completed all his sentencing terms, and his probation was even terminated a year early, without objection from the Government, on March 7, 2000.

Other than the above referenced offense, Atkinson has never been charged or convicted of any offense which makes him ineligible to possess firearms under 18 U.S.C. § 922(g), or state law, and but for the above referenced charge, no federal law would prohibit Atkinson's possession of firearms.

3

Atkinson acknowledges that his behavior was wrong. Since that time, he owns two companies: Waterford Executive Group, the aforementioned executive recruiting firm; and Atkinson Ergonomic Solutions, Inc, which was formed in 2018, and which has created a device for lifting hotel beds for greater ease and efficiency of both making the beds, and cleaning underneath them. Atkinson has not been convicted of any further offenses, including any crime of violence or threatened violence.

Atkinson is a law-abiding citizen, and has been for several decades.

Atkinson desires and intends to possess firearms for self-defense and for defense of his family.

## ARGUMENT

### Standard for Motion to Dismiss

#### F.R. Civ. P. 12(b)(6) Standard

"[W]hen considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court takes the allegations in the complaint as true, viewing all facts -- as well as any inferences reasonably drawn therefrom -- in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S. Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 [ ] (2002))." *Manuel v. Lyles*, 2008 U.S. Dist. LEXIS 51433, 5-6 (N.D. Ill. June 30, 2008).

4

Generally, a dismissal pursuant to Rule 12(b)(6) is appropriate only if there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016). To survive such a motion the factual allegations of the complaint, accepted as true for the purpose motion, need only be "plausible" and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A well-pleaded complaint may proceed even if it appears 'that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.' *Bell Atlantic Corp.*, 127 S. Ct. at 1965. Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 127 S. Ct. at 1973-74 & n.14." *Manuel*, 2008 U.S. Dist. LEXIS 51433 at **5-6.

I. <u>WHEN PERMITTED TO SUBMIT EVIDENCE, PLAINTIFF CAN DEMONSTRATE THAT DESPITE HIS CONVICTION, HE IS NONETHELESS A LAW-ABIDING PERSON DESERVING OF THE RESTORATION OF HIS SECOND AMENDMENT RIGHTS.</u>

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." And the Court stressed that "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Id.* at 634 (emphasis deleted).

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even

5

future judges think that scope too broad." *Id.*, 554 U.S. at 634-635. The Second Amendment "is fully applicable against the States." *McDonald*, 561 U.S. at 791.

St. George Tucker wrote: "Wherever . . . the right of the people to keep and bear arms is, under any colour or pretext whatsoever, prohibited, liberty, if not already annihilated, is on the brink of destruction." Tucker, *View of the Constitution of the United States,* 1 BLACKSTONE'S COMMENTARIES, ed. app. at 300 (1803). *Heller* endorsed this passage from Tucker. 554 U.S. at 606.

The Supreme Court in *Heller* stated that felon disarmament laws as "presumptively lawful." *Heller*, 554 U.S. at 626, fn.26 (2008). Atkinson does not advance a facial challenge to 18 U.S.C. 922(g)(1) in this suit. By using the word "presumptively" in referencing the felon disarmament statute, the *Heller* Court sent a clear message there must be *some* way to rebut the presumption. Clearly, the plaintiffs in *Kanter* and *Hatfield v. Barr*, 925 F.3d 950 (7th Cir. 2019) did not qualify.

This case, therefore, further tests the limits of whether anyone can ever be considered to be sufficiently rehabilitated and redeemed. Atkinson committed a crime twenty-three years ago. It was a non-violent felony, one he did not even know he was committing until it was too late, and he paid for it well-in-excess of the $6,000.00 he profited from his role in the fraud scheme.

And even with that, Atkinson is not asking the Court to simply rule in his favor, as if taking his word for it simply based on his written Complaint. All Atkinson is seeking is a hearing, where he can testify in person and give the Court

6

the opportunity to judge his character today, and not through the lens of his worst moment long ago.

Atkinson knows there are plenty of people whose worst moments would make such a request pointless. The *Kanter* Court cited to numerous examples of this.[1] And after all, if the plaintiffs in *Kanter* and *Hatfield*[2] do not meet the standard, then most people would be out of luck. But *someone* has to qualify, and all Atkinson seeks is a chance to show the Court that it is him. He was not incarcerated for his offense, which distinguishes him from the plaintiff in *Kanter*. And though he received a period of home confinement, his probation was terminated a year early without government objection.

There is much evidence that the statistics relied upon in *Kanter* do not apply to him. Atkinson refrains from possessing a firearm for self-defense and other lawful purposes only because he reasonably fears arrest, prosecution, incarceration and fine pursuant to 18 U.S.C. § 922(g)(1), and 430 ILCS 65/14(c)(3), should he possess a firearm. This alone places Atkinson in a different position that the litigants in most of the cases involving 18 U.S.C. § 922(g)(1) such as the defendant in *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010), who was a felon who was arrested for possessing a firearm while a felon, thus largely removing any argument that he was a law-abiding person. Furthermore, as Plaintiff has no

---

[1] *See Kanter*, 919 F.3d at 443 (citing *Baer v. Lynch*, 636 F. App'x 695, 698 (7th Cir. 2016) (individual convicted of felony robbery); *United States v. Shields*, 789 F.3d 733, 750-51 (7th Cir. 2015) (individual who had been convicted of three violent felonies); *United States v. Williams*, 616 F.3d at 693-94 (individual convicted of felony robbery who "beat[] the victim so badly that the victim required sixty-five stitches"); *United States v. Skoien*, 614 F.3d 638, 642, 644 (7th Cir. 2010) (*en banc*) (state domestic violence misdemeanant)).

7

history of violence, Defendant's objective is not advanced by prohibiting Atkinson from possessing arms in his home for self-defense.

Defendants' Motion to Dismiss should be denied so that Atkinson may have a chance to make his case.

Using the two-step framework laid out in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), the Defendants' firearms rules and policies cannot survive constitutional scrutiny as applied to Atkinson. As in *Ezell*, Atkinson asserts that he is a law-abiding citizen (the Defendants say he is not, but that is why Atkinson seeks the opportunity to prove himself). Banning Atkinson from forever possessing firearms, even in his home for self-defense, clearly implicates Second Amendment rights (*See Heller*, 554 U.S. at 636). The Seventh Circuit in *Kanter* presumed that the restriction implicated the Second Amendment, and moved past step one of the *Ezell* two-step analysis directly to step two – the means-ends analysis. *Kanter*, 919 F.3d at 441, 447 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)).

*Kanter* ultimately concluded that "the felon dispossession statutes are substantially related to the important governmental objective of keeping firearms away those convicted of serious crimes." *Kanter*, 919 F.3d at 451. The fraud committed in *Kanter* ($375.000.00 against Medicare over a period of time) was clearly serious, as was the fraud in *Medina v. Whitaker*, 913 F.3d 152, 160 (D.C. Cir. 2019) (a few years after probation for the felony fraud ended, plaintiff was convicted of three counts of misdemeanor fraud). The case law is full of unique individual situations.

---

[2] Especially, in this author's opinion, the plaintiff in *Hatfield*.

Atkinson regrets his role in the scheme for which he was convicted. However, when one considers the crime, he was convicted not of taking the $6,000.00 – for he was arguably entitled to a commission as a corporate recruiter for placing a client in a position – but for *sharing* the other $6,000.00 with the con man who fraudulently placed the candidate with his own company and then took half of the commission for doing so. If Atkinson had kept the entire $12,000.00, as an outside recruiter he would have done nothing wrong. This happened one time, and once he realized that something was suspicious about the situation, he refused any further participation. Of course, the authorities were already investigating, and Atkinson did plead guilty as a voluntary act. But he was not the ringleader, and his unwitting participation was not evidence of a "thought-out crime," at least on Atkinson's part. *See Hatfield*, 925 F.3d at 951.

Atkinson's offense was far less severe than in *Kanter*, and even less than in *Hatfield*, where the plaintiff willfully submitted the fraudulent Railroad Retirement Board benefit claim forms over a period of months to the government. Atkinson accepted responsibility for his actions, and has spent the last twenty years moving past them. He is willing to supply whatever information the Court requires to prove himself, and whatever difficulty the *Kanter* Court found generally in conducting such an investigation (*Kanter*, 919 F.3d at 450-51), Atkinson will not be such a case.

Atkinson recognizes that gun crimes and gun tragedies have been in the news. Nothing Atkinson submits here is meant to diminish the wrongful acts committed by certain persons with guns, some of whom were already prohibited

9

persons under 18 U.S.C. § 922(g)(1), who should never have been allowed to possess guns in the first place. This includes criminals in Chicago who continue to illegally obtain firearms and terrorize the City's residents.

Atkinson requests this Court not penalize him for the terrible actions of violent criminal wrongdoers, including those in statistical studies. Certainly, much more must be done to ensure that people who should not have access to weapons are not able to do so, but not allowing Atkinson even a chance to show that he does not fall into that category does not make society safer. Since "the enshrinement of constitutional rights necessarily takes certain policy choices off the table," *Heller*, 554 U.S. at 636, Atkinson must be given an opportunity to prove that the felon-in-possession law, as applied to him, is not substantially related to the government's interest.

In *Kanter*, the Seventh Circuit noted the following:

> [T]he government points to several studies that have found a connection between nonviolent offenders like Kanter and a risk of future violent crime. For example, one study of 210,886 nonviolent offenders found that about one in five were rearrested for a violent crime within three years of his or her release. *See U.S. Dep't of Justice, Bureau of Justice Statistics Profile of Nonviolent Offenders Exiting State Prisons* 2, 4 (2004). A separate study found that 28.5 percent of nonviolent property offenders—a category that includes fraud convictions—were rearrested for a violent offense within five years of their release. *See* Matthew R. Durose, *et al., U.S. Dep't of Justice, Bureau of Justice Statistics, Recidivism of Prisoner Released in 30 States in 2005: Patterns from 2005 to 2010*, at 9 (2014).

*Kanter*, 919 F.3d at 449.

Atkinson has not been [re]arrested for a violent offense – not in three years, or five years, or twenty years.[3] *Kanter* should not bar Atkinson's claim; *Kanter* shows exactly why Atkinson is the exception. While *Kanter* has allowed for a "reasonable fit" of the felon-in-possession statute to the purpose of "preventing gun violence by keeping firearms away from persons, such as those convicted of serious crimes, who might be expected to misuse them," *Kanter*, 919 F.3d at 448, this begs the question of what should happen when Atkinson can demonstrate that the evidence relied upon in *Kanter* does not apply to him. "There may be a case in the future that requires addressing whether any individual may successfully bring an as-applied challenge to the statute." *Kanter*, 919 F.3d at 450, fn.12. Atkinson respectfully submits that this is that case, and that alone warrants the denial of Defendants' Motion to Dismiss.

At least 19 professionally conducted national surveys have specifically asked respondents whether they had used a gun for self-protection. The most technically sound of the surveys indicated there were 2.5 million defensive gun uses in 1992 (Kleck, Gary and Gertz, Marc, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, J. of Criminal Law and Criminology, v.86, n.1, pp.150-187 (1995)).

That survey indicated that 36% of the defensive uses were carried out near but not in the defender's home and another 27% were carried out in locations that were neither near nor in the defender's home (*Id.* at 185). This leaves 37% of the

---

[3] Of course, bring arrested is not the same as being convicted, but that is a discussion for a different plaintiff since Atkinson was not even rearrested for anything.

11

defensive gun uses to have occurred in the defender's home. Thus, anywhere from 296,000 to 1,332,000 defensive uses in 1992 occurred in the defender's home, and anywhere from 288,000 to 1,296,000 defensive uses in 1992 occurred near the defender's home.

Since crime rates are only about half as high today as in 1992, the number of defensive gun uses is probably likewise about half what it was back then - perhaps about 1.25 million. Nevertheless, the number of defensive uses is still enormous. As a point of reference, in 2014 about 466,110 crimes were committed with firearms, including both crimes reported to the police and crimes not reported (U.S. Bureau of Justice Statistics. 2016. *Criminal Victimization, 2014*. Revised September 29, 2015. Available online at http://www.bis.gov/content/pub/pdf/cvl 4.pdf, p.3). Defensive uses of guns by crime victims therefore appears to be about three times more common than crimes committed by offenders using guns.

Thus, there is substantial public benefit in allowing law-abiding citizens to possess firearms for self-defense purposes, a benefit is severely hampered when deserving persons are categorically prohibited from possessing a firearm without even a chance to prove their worthiness. As-applied to Atkinson, 18 U.S.C. § 922(g)(1) is not sufficiently tailored to achieve its claimed benefit. At the very least, Atkinson has stated a valid claim that the Defendants have violated his Second Amendment rights. The Defendants' Motion does not show that there is no set of facts consistent with Atkinson's Complaint upon which relief could be granted. The Defendant's Motion to Dismiss should be denied.

## II. *KANTER* WAS WRONGLY DECIDED.

Though this issue is foreclosed in this Court, and in addition to the above argument that *Kanter* does not mandate dismissal of his pending Complaint, Atkinson preserves for appeal his argument that *Kanter* was incorrectly decided.

Specifically, Atkinson preserves the question of whether 18 U.S.C. § 922(g)(1), which permanently prohibits nearly all felons—even those convicted of nonviolent crimes—from possessing firearms for self-defense, violates the Second Amendment, as applied to an individual convicted of frauds and swindles, in violation of 18 U.S.C. § 1341, a Class C felony, and who did it unknowingly and profited only $6,000.00, and who was sentenced to two years of probation with six months of home confinement, a fine of $15,000.00, and 200 hours of community service, and who completed all his sentencing terms, and had his probation terminated a year early, without objection from the Government, more than twenty years ago.

These factors, along with the holding in *Heller* that the felon disarmament law is only "presumptively lawful," and therefore must be at least capable of being rebutted, demonstrate why *Kanter* should be revisited and overruled, at least in situations such as presented by Atkinson. Atkinson preserves this issue for appeal.

## CONCLUSION

WHEREFORE, the Plaintiff, PATRICK ATKINSON, requests this Honorable Court deny the Defendants' Motion to Dismiss in its entirety, and for any and all further relief as this court deems appropriate.


Date:  May 14, 2021 /s/ David G. Sigale
Attorney for Plaintiff


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

    1.    On May 14, 2021, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

    2.    Pursuant to F.R. Civ. P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

    /s/ David G. Sigale
    Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
430 West Roosevelt Road
Wheaton, IL 60187
630.452.4547
dsigale@sigalelaw.com