IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK ATKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 C 291 |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| MERRICK GARLAND, in his official capacity as Attorney General of the United States, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Federal law precludes Patrick Atkinson, a convicted felon, from possessing a firearm. *See* 18 U.S.C. § 922(g)(1). Atkinson has sued the Attorney General of the United States and the Acting Director of the Bureau of Alcohol, Tobacco, Firearms, challenging the constitutionality of this law. *See* [1]. Defendants move to dismiss, [6], and because Atkinson's claim plainly lacks merit, the Court grants the motion.

**I.    The Complaint's Allegations**

On October 16, 1998, Atkinson pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341, a Class C felony. [1] at ¶ 7. At that time, Atkinson worked as an Executive Recruiter for Waterford Executive Group, a company he founded in 1990. *Id.* at ¶ 8. One of his clients, John Zerba, worked in the recruiting department at a large Illinois company that specialized in consultants and outsourcing; Atkinson placed actuaries and consultants at the company in exchange for a consulting fee. *Id.*  In 1998, Zerba offered Atkinson a moonlighting job whereby

Zerba would find professional candidates, Atkinson would place them with employers, and the two would split the recruiting fee. *Id.* at ¶ 9. The arrangement worked without incident a couple of times. *Id.*

A few months later, Zerba sent Atkinson a resume for a candidate from Virginia. *Id.* at ¶ 10. When Atkinson could not place the candidate, Zerba hired him at his company. *Id.* Zerba nonetheless demanded that Atkinson send him half the recruiting fee, and Atkinson did so. *Id.* Shortly thereafter, Zerba sent Atkinson another candidate for placement at Zerba's own company; Atkinson thought this seemed suspicious and declined. *Id.* at ¶ 11. Zerba's company later sued Atkinson for fraud, civil RICO violations, and conspiracy; Atkinson settled that case for $45,000. *Id.* at ¶ 13.

Upon further investigation, authorities learned that Atkinson had participated in a fraudulent "hub and spoke" scheme that Zerba was running with other recruiters. *Id.* at ¶ 12. For his involvement, Atkinson was charged with one count of mail fraud in violation of 18 U.S.C. § 1341, a Class C felony punishable by a sentence of up to twenty years. 18 U.S.C. § 1341 (2019); *Id.* at ¶¶ 7, 14. Atkinson was sentenced to two years of probation, which was terminated after one year. *Id.* at ¶ 14. He served six months of home confinement, paid a $15,000 fine, and served 200 hours of community service. *Id.*

Since completing his sentence, Atkinson has not been convicted of any additional crimes and has no history of violence. *Id.* at ¶¶ 16, 27. He is married and has two grown children. *Id.* at ¶ 3. He continues to operate his recruiting company

and, in 2018, opened Atkinson Ergonomic Solutions, Inc., which makes devices that assist hotels with lifting beds for cleaning. *Id.* at ¶ 16.

In his complaint, Atkinson acknowledges that his felony conviction prohibits him from possessing a firearm under both federal and Illinois law. *Id.* at ¶¶ 32–35; *see also* 18 U.S.C. § 922(g)(1); 430 Ill. Comp. Stat. Ann. 65/4(a)(2)(ii), 65/2(a)(1). He alleges, however, that his "unique personal circumstances" make the application of this law to him unconstitutional. [1] at ¶ 38. On January 18, 2021, he sued United States Attorney General Merrick Garland and ATF Acting Director Regina Lombardo in their official capacities, seeking a declaratory judgment that 18 U.S.C. § 922(g)(1), as applied to him personally, unconstitutionally infringes his Second Amendment right to "keep and bear arms" for self-defense at home. [1] at 1–2. Defendants move to dismiss Atkinson's claim based upon binding precedent demonstrating that categorical bans on felons possessing firearms fall outside the scope of the Second Amendment and that prohibiting felons from possessing firearms under § 922(g)(1) is substantially related to the government's compelling interest in preventing violent crime and protecting public safety. [6-1] at 1.

## II.  Legal Standards

To survive a motion to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the complaint must include sufficient factual allegations to show a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, *id.*, the facts in the complaint must present a claim that rises "above the speculative level." *Id.* at 545. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements" cannot by themselves satisfy Rule 8's requirement that the complaint show the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering whether the complaint demonstrates a plausible right to relief, the Court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In contrast, "legal conclusions and conclusory allegations . . . are not entitled to this presumption of truth" and should not be considered when deciding on a motion to dismiss. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). If the Court finds, after eliminating any legal conclusions and considering only the plaintiff's factual allegations, that the complaint does not show a plausible right to relief, then the moving party's motion to dismiss should be granted. *Iqbal*, 556 U.S. at 679.

### III. Discussion & Analysis

As he must, Atkinson acknowledges in his complaint that his felony conviction prohibits him from possessing a firearm under both federal and Illinois law. *Id.* at ¶¶ 32–35; *see also* 18 U.S.C. § 922(g)(1); 430 Ill. Comp. Stat. Ann. 65/4(a)(2)(ii). Specifically, federal law prohibits anyone convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. 18 U.S.C. § 922(g)(1). In addition, Illinois residents must obtain a Firearm Owners Identification Card ("FOID card") to possess a firearm, under 430 Ill. Comp. Stat. Ann. 65/2(a)(1),

4

but individuals with a felony conviction are prohibited from obtaining a card. 430 Ill. Comp. Stat. 65/2(a)(2)(ii). Nevertheless, Atkinson argues that § 922(g)(1), as applied to him, violates his Second Amendment right to possess firearms for purposes of self-defense.

The Second Amendment right to keep and bear arms is "not unlimited": it does not, for example, "protect those weapons not typically possessed by law-abiding citizens for lawful purposes"; nor does it preclude "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Dist. of Columbia v. Heller*, 554 U.S. 570, 595, 625, 626–27 (2008); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) (noting that "*Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," and repeated the "assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . .").

Applying *Heller*, the Seventh Circuit has rejected—at least twice—the very claim Atkinson makes today. In *Kanter v. Barr*, the plaintiff (like Atkinson) pled guilty to one count of mail fraud under 18 U.S.C. § 1341, which, as Atkinson concedes, carries a maximum penalty of twenty years in prison and a $250,000 fine. 919 F.3d 437, 440 (7th Cir. 2019). Kanter was sentenced to 366 days in prison and two years

of supervised release; he was also ordered to pay a criminal penalty of $50,000, and he reimbursed Medicare over $27 million in a related civil settlement. *Id.* After serving his time and paying his criminal penalty, Kanter (like Atkinson) kept his nose clean and did not engage in any further criminal behavior; he (like Atkinson) was married, employed, and did not use illicit drugs, yet federal law prohibited him from owning a firearm. *Id.* at 440, 449. Kanter sued, arguing (like Atkinson) that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to *him*, given his status as a married, employed, nonviolent offender with no other criminal record who did not use illicit drugs. *Id.* at 440, 449. After an exhaustive examination of post-*Heller* cases concerning as-applied challenges to § 922(g), the Seventh Circuit held that "Kanter's serious felony conviction prevents him from challenging the constitutionality of § 922(g)(1) as applied to him," and it rejected Kanter's request for a "fact-specific inquiry." *Id.* at 450.

In *Hatfield v. Barr*, a case decided just a few months after *Kanter*, the Seventh Circuit explained that it rejected Kanter's § 922(g)(1) as applied challenge, "not just because it appears to be inconsistent with the Supreme Court's statements [in *Heller*] but also because fraud is a thought-out crime that demonstrates disdain for the rights of others and disrespect for the law"; "a person convicted of fraud is not the sort of law-abiding, responsible citizen to whom *Heller* referred." 925 F.3d 950, 951 (7th Cir. 2019). But Hatfield argued that § 922(g)(1) was unconstitutional as applied to *him* because his crime was less serious than Kanter's and because he was not sentenced to imprisonment but was instead sentenced to three years' probation for his crime.

6

*Id.* Rejecting the claim, the Seventh Circuit held that the nature of Hatfield's crime was the same as Kanter's: both involved "fraud to get federal benefits to which the applicant was not entitled" and "the maximum penalty for each crime was at least five years in prison, well over the one-year line drawn by § 922(g)(1)." *Id.* at 951–52. Specifically with regard to Hatfield's argument that he was different from Kanter because he got probation and not a term of imprisonment, the court held that "§ 922(g)(1) may be applied to a felon convicted of fraud, whose maximum sentence exceeded a year, even if the actual punishment was less." *Id.* at 952.

The court discussed in detail Hatfield's argument (which Atkinson echoes) that he was somehow less dangerous than the average convicted felon. *Id.* at 952–53. The court theorized that, if it "could know reliably who will be law-abiding, responsible citizens despite felony convictions, the Supreme Court might include them among those protected by the Second Amendment." *Id.* at 952. But, the court held, Hatfield did not "show or even contend that it is possible to predict a felon's future dangerousness." *Id.* Even though certain evidence shows that only 40% of those convicted of nonviolent offenses are caught committing crimes in the future, "40% is still a substantial recidivism rate, and without some way to know who will commit new crimes—and whether those crimes are likely to entail the threat or use of violence—it is not possible to declare that any particular felon could be entrusted with firearms." *Id.* The court then held that, because Hatfield could not "show that it is possible to say whether he, and others like him, are to a constitutionally dispositive degree less dangerous than other felons," he "must accept that the

7

Supreme Court's norm applies to him. He is not entitled to possess firearms." *Id.* at 953.

*Kanter* and *Hatfield* are dispositive. Atkinson argues that "there are significant differences between the situation in *Kanter* and the instant case that require denial of Defendants' Motion." [8] at 1. But he does not explain what those differences are, and from this Court's perspective, the cases are materially identical: Atkinson committed the same crime as Kanter and was thus subject to the same maximum penalty. And to the extent Atkinson suggests that his sentence to probation somehow sets him apart, *Hatfield* says otherwise.

Moreover, *Kanter* and *Hatfield* foreclose the factual inquiry into an individualized assessment of character that Atkinson seeks. As the Seventh Circuit explained, "without some way to know who will commit new crimes—and whether those crimes are likely to entail the threat or use of violence—it is not possible to declare that any particular felon could be entrusted with firearms. This may be why Congress withdrew funding from the § 925(c) program. No one wants to pay for a program that does not have a prospect of success." 925 F.3d at 952–53. The observation was not novel. The court made the same pronouncement almost a decade earlier in *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010), and repeated it in *Kanter*: "most felons are nonviolent, but someone with a felony conviction on his record is more likely than a non-felon to engage in illegal and violent gun use." 919 F.3d at 448. Although the dissent in *Kanter* accepted the argument that personal characteristics such as marital status, employment status, and the absence of drug

8

use could be used to show a nonviolent felon has a lower risk for committing violent crime, *Kanter*, 925 F.3d at 468–69 (Barrett, J., dissenting), the majority rejected that approach. *Id.* at 449. *Hatfield*—in which the court denied requests for rehearing and rehearing en banc—reiterates the *Kanter* majority's ruling which is, of course, binding on this Court.

Beyond this, the Court rejects Atkinson's suggestion that any individualized assessment would help him. Based upon Atkinson's allegations and his response to Defendants' motion to dismiss, it appears that, when he says he is different from Kanter, he means that, unlike Kanter, he really did not mean to commit a crime. In other words, despite pleading guilty to mail fraud, a crime that included as an essential element his commission of an act with intent to defraud, *e.g., Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298–99 (7th Cir. 2003), Atkinson suggests that he differs from Kanter because he participated unknowingly in the charged fraudulent scheme (a troubling denial of guilt in light of his prior plea of guilty); he also claims his otherwise clean record shows he does not present a danger to public safety. [8] at 3, 9. In the latter respect he mirrors Kanter, who also committed no further crime, was employed and married, abstained from using illicit drugs, and was nonetheless constitutionally precluded from owning a firearm.[1]

---

[1] Atkinson also suggests that he is exceptional because he only wants a gun for self-defense. But what convicted felon would say otherwise? It is preposterous to think that a felon's representations concerning future use overcome the judicial pronouncements concerning the impossibility of distinguishing "harmless" felons from "dangerous" felons—especially when that felon has been convicted of fraud.

As to Atkinson's claim that he unknowingly committed fraud, Atkinson pled guilty to mail fraud, which undermines any claim that he acted without the intent to defraud. His crime constituted a serious felony that "reflects significant disrespect for the law" and "carries a maximum penalty of twenty years in prison and a $250,000 fine." *Kanter*, 919 F.3d at 440, 450. By pleading guilty, Atkinson acknowledged that he committed the crime. To the extent he still has a legal way to challenge his plea or conviction, this case is not that vehicle, and his ostensible recantation of his prior guilty plea otherwise undermines his claims here.

In short, the Supreme Court and the Seventh Circuit have consistently sanctioned categorical bans against felons like Atkinson. *Heller*, 554 U.S. at 626; *McDonald*, 561 U.S. at 786; *Kanter*, 919 F.3d at 449 (quoting *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010)). Atkinson's claim that he is somehow special lacks merit; he is no more entitled to possess a firearm than Kanter, Hatfield, or any other convicted felon.

## IV.  Conclusion

Based upon binding precedent, Atkinson's claim lacks merit. As a result, the Court grants Defendants' motion to dismiss [6] and dismisses this case with prejudice.

Dated: March 15, 2022

Entered:

John Robert Blakey  
United States District Judge